Take care of yourselves. Thank you, Your Honor. Okay, we're going to go on to case number four, and that is 21-21-86 Green Beginnings, LLC v. West Bend Mutual Insurance. And good morning, Mr. Rutter. You may begin. Sorry, I just needed to unmute. Good morning, Your Honor, and may it please the court. This case, I'm Bobby Rutter, I represent Green Beginnings, and this case involves the same predominant policy terms as your previous case, and some overlap with the first case that was heard today. So I do have the benefit of hearing some of the questions and would like to just address a few things narrowly as opposed to very broadly here. The crux of the West Bend case is exactly what Your Honors have talked about earlier, and that's this communicable disease coverage that we do have some agreement on with counsel, and that is it's not subject to the direct physical loss or damage standard, so we can set that aside. It's not subject to any virus exclusion because that wouldn't make any sense, and it is limited to a monetary sublimit of $50,000 or $100,000. So the only thing we're really disagreeing about right now, and there were some questions in the previous argument, is this at-insured premises language, and whether it should be broadly interpreted or it should be somehow limited to only with the building described in the policy. Before you do that, you stated at one point in your brief that an employee, active enrollees, and children's family members all tested positive prior to the executive order taking effect, but later on in the brief, you stated that those positive results occurred, quote, within days of the initial Illinois closure orders taking effect. Could you kindly clarify whether there was a COVID-19 outbreak at your premises prior to the issuance of the closure order? Yes, Your Honor. We had one staff member prior to the closure order test positive, and that would meet the definition of outbreak for this disease. We did have subsequent people that we thought would be in the facility that tested positive, but the distinction there is the one individual prior to the shutdown. So although the order, like has been pointed out, does not specifically say green beginnings or list our address, we are part of what the order affected, in that we are in Cook County. It applied to us. I don't think Cook County is going to go through and just list every single building that exists there that they need to order to shut down due to an outbreak. We had an outbreak at our facility. There was an outbreak other places. There's nothing in that language that would allow West Bend to rewrite its policy to state that this is only for incidents that occur on our premises and whatever happens elsewhere doesn't matter. So really the main crux of this particular case, setting aside direct physical loss or damage, is this communicable disease coverage that we believe we're entitled to. If we were to move on from that and talk about direct physical damage, I noticed earlier and repair language within the period of restoration language affect this definition. And if we were to examine the word repair and its dictionary definition, which is what we should be doing, it's a pretty broad term. And obviously repair can mean cleaning, moving, removing, resectioning, re-ventilating, all of those types of things that the daycare center, such as ours, had to undergo. That was one point that was brought up. That's really the only two items that I wanted to address and I reserved three minutes for rebuttal. But if there are no questions, I'd be happy to. I do have a question, please. How do you respond to the appellee's argument that you've waived any arguments regarding civil authority coverage or regarding the inapplicability of the virus exclusion because you failed to develop those issues? We're not proceeding under a civil authority argument, Your Honor. We're here for communicable disease coverage and that particular sublet. Okay. Thank you very much. Thank you. Morning. May it please the court. Jason Fatala on behalf of Appellee West Bend Mutual Insurance Company. I understood from counsel's last questions that the only coverage that's at issue in this appeal is communicable disease coverage. And the only argument that was advanced was the same argument that we heard in the first appeal. And that is that the coverage can apply if there was an outbreak anywhere. There doesn't have to be an outbreak at the insured premises. And so I'll just very briefly recap that the policy language expressly states the shutdown or suspension must be due to an outbreak of a communicable disease or waterborne pathogen at the insured premises as described in the declarations. Counsel, plaintiff's interpretation, it renders that last clause at the insured premises as described in the declarations completely meaningless. And then- Let me do this, Mr. Fatula. Let's say that the closure order was limited to all childcare facilities based on a massive outbreak at those facilities in particular. And Green Beginnings was among the ones with such an outbreak. Would you still argue that the closure was not due to an outbreak at Green Beginnings because Green Beginnings was not specifically named? I'd have to see the order, but it sounds like you're saying the order says that there had been outbreaks at these facilities, which would include in some way Green Beginnings, and they're being shut down because of that. If that's what the order said, then it would be my position that there probably is communicable disease coverage. But here, we don't have that. We don't have an order that was issued in response to anything that occurred at Green Beginnings. It states expressly in the order that it's prophylactic. It's intended to stop the spread. Plaintiff's allegations acknowledge that the order was issued as an attempt to stop the spread. It's forward looking. It is not in response to anything that has happened here or anywhere else in particular, but certainly not here. And that has been what almost every court that has looked at this issue has decided, including the Fifth Circuit and the Sixth Circuit. There simply is no way to look at these shutdown orders and find any connection whatsoever to anything that occurred to plaintiff's premises. If these premises did not exist, these orders would have been issued in exactly the same form with exactly the same effect. So that's not the scenario that we have here. I will note that we've submitted those authorities and council has not responded to them. They contain the exact same causal nexus language, at least functional equivalent of the causal nexus language that we have here. So they're really indistinguishable. And I imagine that's why we haven't heard much of a response. With that, because no other issues were addressed, I would open myself up for questions. Otherwise, rest on the briefs and ask the court to affirm. Well, I'm still harping on the loss or damage. I agree. That's a limitation. It requires repair. Completely agree, Your Honor. Or replacement. Physical loss or physical damage requires repair, replacement. I completely agree. Okay. Well, that's... And that's not the reason... It can go on and on for all kinds of reasons that are going on in the country or something. I don't know what. Right. Talking about specific insurance policy for this daycare center. Agreed, Your Honor. Well, are you... Yes, Your Honor. I understand this case is down to communicable disease coverage, and it's down to the due to. And I believe the text of the orders are very clear. The language and the policy is very clear. And almost every court that has looked at this has reached the exact same conclusion that there needs to be a causal nexus, and there simply is no causal nexus between general preventive orders and anything that occurred at these insured premises. There's no evidence that anyone in the government even knew about this supposed outbreak at Green Beginnings premises, much less issued an order in response to it. Okay. I take it that's your last word. Am I correct? Correct, unless there are any questions, Your Honor. Right. Okay. Mr. Rutter, you may. Thank you, Your Honor. What I think we have a disagreement about is what these orders are and what they're for and what they did. To just generalize these orders and say, well, the government had no clue what was going on, and so they just threw out these preventative measure orders and they really didn't do anything, I think is a grave misunderstanding of what they did. The government knew that it had a problem and had cases in places. Now, Green Beginnings did have this type of issue. Certainly, we have alleged that. So maybe we're better situated to get this coverage than others. But it is not just a simple preventative order that was given for no apparent reason. It fits squarely within what their communicable disease coverage is for. It's for exactly this type of situation. I struggle to come up with a better example of what it should be used for than this particular situation. And trying to just narrow, narrow, narrow when it's in a section called additional coverages is an inappropriate analysis. And we've seen the court, especially in Sandy, say, you know, some of these issues are going to be decided and we're left to predict what the Illinois Supreme Court will do. But there's one axiom of insurance law that was reaffirmed by the Illinois Supreme Court in September in the case of Sproul, S-P-R-O-U-L-L. And that is, in Illinois, when there's competing and reasonable interpretations, we don't get to pick which one is better. The court has to construe the policy in favor of coverage. So to the extent maybe the defendant can say, well, their interpretation makes some degree of sense, ours certainly does too. And therefore, we prevail on this limited subset of coverage. Thank you very much. Thanks to both of you. Thank you very much. And take care of yourselves and your families and case will be taken under. Thank you.